# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ETHAN VOLUNGIS, et al., | Case No. 2:17-CV-2247 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | |
| Defendant(s). | |

Presently before the court is defendant Liberty Mutual Fire Insurance's ("Liberty Mutual") motion to dismiss. (ECF No. 5). Plaintiffs Farooq Abdulla ("Mr. Abdulla"), Nighat Abdulla, and Ethan Volungis filed a response (ECF No. 12), to which Liberty Mutual replied (ECF No. 13).

**I.   Facts**

On July 2, 2013, Volungis and Mr. Abdulla were involved in a motor vehicle accident. (ECF No. 1, Ex. 1). At the time of the accident, Mr. Abdulla was insured under a personal automobile insurance policy issued by Liberty Mutual with limits of $100,000 per person/$300,000 per accident ("the policy"). *Id.* Volungis sustained serious bodily injuries as a result of the accident. *Id.*

On February 14, 2014, Volungis's attorney mailed a policy limit demand for $100,000 to Liberty Mutual. *Id.* at 3. The demand was expressly contingent upon Volungis's attorney receiving Liberty Mutual's acceptance, in writing, by 5:00 p.m. on March 14, 2014, or the offer would be withdrawn. *Id.* at 4. The demand was also conditioned upon Liberty Mutual providing a copy of the Abdullas' policy declaration sheet, and a representation confirming that there was no additional insurance coverage covering either the owner or the driver of the subject vehicle. *Id.*

**James C. Mahan
U.S. District Judge**

On March 14, 2014, Liberty Mutual mailed a letter to Volungis's attorney providing a settlement and release form. *Id.* Liberty Mutual did not provide Volungis's attorney with a copy of the Abdullas' policy declaration sheet or a representation confirming that there was no additional insurance coverage. *Id.*

On March 26, 2014, Liberty Mutual drafted another letter to Volungis's attorney confirming its settlement offer of $100,000. *Id.* The letter did not include a copy of the Abdullas' policy declaration sheet or a representation confirming that there was no additional insurance coverage. *Id.*

On June 20, 2014, Volungis filed his complaint against Mr. Abdulla in the Eighth Judicial District Court of Clark County, Nevada. *Id.* at 5. On July 2, 2014, Liberty Mutual contacted Volungis's attorney regarding Liberty Mutual's agreement to settle for the limits of the policy. *Id.* Volungis's attorney responded that Volungis was no longer willing to settle because Liberty Mutual failed to provide a copy of the Abdullas' policy declaration sheet or a representation confirming that there was no additional insurance coverage by the March 14, 2014, deadline. *Id.*

On May 6, 2016, a jury found in favor of Volungis on his personal injury claims against Mr. Abdulla, awarding Volungis damages totaling $6,798,413.07. *Id.* at 6. On October 31, 2016, the Abdullas filed for bankruptcy protection. *Id.* at 7. Mr. Abdulla subsequently assigned to Volungis all assignable claims that he has against Liberty Mutual, up to the total amount of the judgment. *Id.* at 7-8.

On July 27, 2017, plaintiffs filed a complaint in the Eighth Judicial District Court of Clark County, Nevada, asserting four claims for relief. *Id.* On August 24, 2017, Liberty Mutual filed a petition for removal to this court. (ECF No. 1). In the instant motion, Liberty Mutual moves to dismiss plaintiffs' complaint. (ECF No. 5).

## II.    Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed

James C. Mahan
U.S. District Judge

- 2 -

factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. 662, 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

. . .

. . .

## III. Discussion

In the instant motion, Liberty Mutual moves to dismiss plaintiffs four claims for relief: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of Nevada Revised Statute § 686A.310; and (4) punitive damages pursuant to NRS § 42.005. (ECF No. 5). The court will analyze these claims separately.

### a. Breach of contract

An insurance policy is a contract between a policyholder and an insurer in which the policyholder agrees to pay premiums in exchange for financial protection from foreseeable, yet unpreventable, events. *Benchmark Ins. Co. v. Sparks*, 254 P.3d 617, 620 (Nev. 2011) (citing 1 *New Appleman Insurance Law Practice Guide* § 1.03[1] (Leo Martinez et al. eds., 2010)). As such, the duties undertaken by the policyholder and the insurer are defined by the terms of the policy itself. *Id.*

In a standard auto liability policy, such as the one at issue here, the insurer generally undertakes two duties in exchange for the policyholder's premium payments: (1) a duty to indemnify the policyholder for damages he or she causes while driving, and (2) a duty to defend the policyholder against any claims of liability brought against the policyholder in connection with these damages. *See United National Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1156 (Nev. 2004). Because the duties undertaken by an insurer are dictated by the terms of its contract with the policyholder, an insurer is free to contractually limit these duties. *Farmers Ins. Group v. Stonik*, 867 P.2d 389, 391 (Nev. 1994). "In order for an insurer to effectively limit its contractual obligations, the insurance policy's language must unambiguously convey the insurer's intent to do so." *Id.*

The duty to indemnify arises when an insured "becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy." *United National Ins. Co.* 99 P.3d at 1157 (quoting *Zurich Ins. Co. v. Raymark Industries*, 514 N.E. 2d 150, 163 (Ill. 1987)). In other words, for an insurer to be obligated to indemnify an insured, "the insured's activity and the resulting loss [must] actually fall within the policy's coverage." *Id.* at 1158 (quoting *Outboard Marine v. Liberty Mut. Ins.*, 607 N.E. 2d 1204, 1221 (Ill. 1992)).

The duty to defend is broader than the duty to indemnify. *Id.* (citing *Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792, 795 (Cal. 1993)). There is no duty to defend "[w]here there is no potential for coverage." *Id.* (quoting *Bidart v. American Title Ins. Co.*, 734 P.2d 732, 734 (Nev. 1987)). In other words, "[a]n insurer . . . bears a duty to defend its insured whenever it ascertains facts which give rise to the potential liability under the policy." *Id.* (quoting *Gray v. Zurich Ins. Co.*, 419 P.2d 168, 177 (Cal. 1966)). Once the duty to defend arises, "this duty continues throughout the course of the litigation." *Id.* (quoting *Home Sav. Ass'n v. Aetna Cas. & Sur.*, 854 P. 2d 851, 855 (Nev. 1993)). If there is any doubt about whether the duty to defend arises, this doubt must be resolved in favor of the insured. *Aetna Cas. & Sur. v. Centennial Ins. Co.*, 838 F.2d 346, 350 (9th Cir. 1988).

However, "the duty to defend is not absolute." *Id.* A potential for coverage only exists when there is arguable or possible coverage. *United National Ins. Co.*, 99 P.3d at 1158 (citing *Morton by Morton v. Safeco Ins. Co.*, 905 F.2d 1208, 1212 (9th Cir. 1990)). Determining whether an insurer owes a duty to defend is achieved by comparing the allegations of the complaint with the terms of the policy. *Id.* (citing *Hecla Min. Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089-90 (Colo. 1991)).

Here, plaintiffs allege that "under Liberty Mutual's insurance policy, Liberty Mutual promised to pay all claims against Mr. Abdulla up to the Abdullas' applicable policy limit of $100,000. (ECF No. 1, Ex. 1 at 8). Plaintiffs contend that "Liberty Mutual breached the policy of insurance by intentionally and knowingly refusing to settle Volungis's claims against Mr. Abdulla for the Abdullas' liability policy limit." *Id.* In its motion to dismiss, Liberty Mutual argues that the factual allegations in the complaint do not support plaintiffs' contention that Liberty Mutual breached the policy. (ECF No. 5).

Plaintiffs' allegation that Liberty Mutual breached the insurance policy by "intentionally and knowingly failing to settle" is improperly characterized as a breach of contract claim. *See* (ECF No. 1, Ex. 1). The implied covenant, rather than the insurance policy itself, requires the insurer to settle the case within the policy limit when there is a substantial likelihood of recovery in excess of the limit. *See Kelly v. CSE Safeguard Ins.*, No. 2:08-cv-0088-KJD-RJJ, 2011 WL

- 5 -

4526769, at *4 (D. Nev. Sept. 27, 2011) (citing *Murphy v. Allstate Ins. Co.*, 553 P.2d 584, 586 (Cal. 1976)). The duty to settle is "implied in law to protect the insured from exposure to liability in excess of coverage as a result of the insurer's gamble – on which only the insured might lose." *Id.* Accordingly, the court will dismiss plaintiffs' breach of contract claim. *See id.*

### b. Breach of the implied covenant of good faith and fair dealing

Insurance contracts contain an implied covenant of good faith and fair dealing. *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009). "The law, not the insurance contract, imposes this covenant on insurers." *Id.* (citing *United States Fid. & Guar. Co. v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975)). A violation of the covenant gives rise to a bad-faith tort claim. *Id.*

The Nevada Supreme Court has defined bad faith "as the actual or implied awareness of the absence of a reasonable basis for denying [or delaying payment of] benefits of the [insurance] policy." *Am. Excess Ins. Co. v. MGM*, 729 P.2d 1352, 1354-55 (Nev. 1986). Therefore, Nevada's definition of bad faith is: (1) an insurer's denial (or refusal to pay) an insured's claim; (2) without any reasonable basis; and (3) the insurer's knowledge or awareness of the lack of any reasonable basis to deny coverage, or the insurer's reckless disregard as to the unreasonableness of the denial. *See Pioneer Chlor Alkali Co. v. National Union Fire Ins. Co.*, 863 F. Supp. 1237, 1257 (D. Nev. 1994) (citing *Am. Excess Ins. Co.*, 729 P.2d at 1354); *see also Pemberton v. Farmers Ins. Exc.*, 858 P.2d 380, 382 (Nev. 1993) ("[a]n insurer fails to act in good faith when it refuses 'without proper cause' to compensate the insured for a loss covered by the policy.").

Bad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct. *See Guar. Nat'l Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996) (citing *Am. Excess Ins. Co.*, 729 P.2d at 1354-55). "[A]n insured can recover in tort against an insurer for the improper handling of a claim only upon a showing that the insurer acted in bad faith . . . such a showing requires something more than simple negligence." *Sierzega v. Country Preferred Ins. Co.*, No. 2-13-cv-1267-JCM-NJK, 2014 WL 1668630, at *5 (D. Nev. Apr. 25, 2014) (quoting *Adelman v. Associated Int'l Ins. Co.*, 108 Cal. Rptr. 2d 788, 790 (Cal. Ct. App. 2001)).

The Nevada Supreme Court recently held that the failure to adequately inform the insured about a reasonable settlement offer is a factor in a bad faith claim. *See Allstate Ins. Co.*, 212 P.3d

at 325. "This duty to adequately inform an insured arises from the special relationship between the insured and the insurer, which is similar to a fiduciary relationship." *Id.* (citing *Ainsworth v. Combined Ins. Co.*, 763 P.2d 673, 676 (Nev. 1988)). Although the Nevada Supreme Court "has refused to adopt a standard where an insurance company must place the insured's interests over the company's interests, the nature of the relationship requires that the insurer adequately protect the insured's interest." *Id.* At a minimum, "an insurer must equally consider the insured's interests and its own." *Id.*

Moreover, courts in this district have previously held that an insurance company's refusal to accept a policy-limit settlement offer within an arbitrary time span designated by plaintiff does not necessarily constitute bad faith. *See*, *e.g.*, *Sierzega*, 2014 WL 1668630, at *4; *Kalberer v. Am. Family Mut. Ins. Co.*, No. 2:13-cv-2278-JCM-NJK, 2014 WL 4104102, at *3 (D. Nev. Aug. 19, 2014); *Striegel v. Am. Family Mut. Ins. Co.*, No. 2:13-cv-01338-GMN-VCF, 2015 WL 4113178, at *5 (D. Nev. July 7, 2015); *Hicks v. Dairyland Ins. Co.*, No. 2:08-cv-1687-RCJ-PAL, 2010 WL 2541175, at *9 (D. Nev. 2010) *aff'd*, 441 F. App'x 463 (9th Cir. 2011); *AAA Nevada Ins. Co. v. Vnih Chau*, 808 F. Supp. 2d 1282, 1287 (D. Nev. 2010) *aff'd in part, dismissed in part on other grounds sub nom. AAA Nevada Ins. Co. v. Chau*, 463 F. App'x 627 (9th Cir. 2011).

Here, plaintiffs allege that Liberty Mutual breached the implied covenant because it: (1) failed to investigate, evaluate, pay, or reasonably settle Volungis's case against Mr. Abdulla; (2) failed to initiate a reasonable investigation, a reasonable evaluation, and communicate timely and meaningfully with the Abdullas regarding Volungis's claim against Mr. Abdulla; and (3) failed to protect the Abdullas' interests by failing to reasonably settle Volungis's case against Mr. Abdulla within the Abdullas' liability policy limits. (ECF No. 1, Ex. 1 at 9).

The factual allegations contained in the complaint do not indicate that Liberty Mutual's conduct was unreasonable. *See id.* Liberty Mutual mailed a settlement and release form to Volungis's attorney by the imposed March 14, 2014, deadline. *Id.* at 4. Moreover, Liberty Mutual drafted a letter confirming its settlement offer on March 26, 2014. *Id.* Plaintiffs argue that Liberty Mutual's failure to "provide a copy of the declaration page and provide a representation that the Abdullas had no other insurance" by the March 14, 2014, deadline constitutes bad faith. (ECF No.

12 at 10). Yet, Liberty Mutual fulfilled its contractual obligations by tendering a policy limit settlement offer on the March 14, 2014, deadline. *See Pioneer*, 863 F. Supp. at 1257 (holding that bad faith requires that an insurer deny or refuse to pay an insured's claim). Therefore, Liberty Mutual's alleged failure to comply with Volungis's demands, especially given that Liberty Mutual tendered a settlement offer on the March 14, 2014, deadline, does not constitute bad faith. *See Guar. Nat'l Ins. Co.*, 912 P.2d at 272; *Sierzega*, 2014 WL 1668630, at *4; *see also Grant v. State Farm Mut. Auto. Ins. Co.* 958 F.2d 377 (9th Cir. 1992) (quoting *State Farm Mut. Auto. Ins. Co. v. Crane*, 266 Cal Rptr. 422 (1990)) ("[a] policy limits settlement offer was in good faith as a matter of law").

Insofar as plaintiffs contend that "Liberty Mutual breached its duty by failing to inform Mr. Abdulla about Volungis's settlement offer" in their response, this allegation is unsupported by the complaint. *See* (ECF No. 12 at 16). Plaintiffs do not allege that Liberty Mutual failed to inform Mr. Abdulla about the March 14, 2014, settlement offer in their complaint.[1] *See* (ECF No. 1, Ex. 1). Rather, plaintiffs introduce this allegation for the first time in their response. *See* (ECF No. 12 at 17). The court cannot consider new facts asserted in plaintiffs' opposition to the motion to dismiss. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) ("[g]enerally, a district court may not consider any material beyond the pleadings in a ruling on a Rule 12(b)(6) motion"); *see also Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("The 'new' allegations contained in the inmates' opposition, however, are irrelevant for Rule 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers . . ."). Accordingly, because plaintiffs have failed to state a viable breach of the implied covenant of good faith and fair dealing claim, the court will dismiss this cause of action. *See Iqbal*, 556 U.S. at 678.

. . .

. . .

---

[1] Plaintiffs reference the allegation that Liberty Mutual "failed to . . . communicate timely and meaningfully with the Abudllas' regarding Volungis's claim against Mr. Abdulla." *See* (ECF No. 12 at 17). This conclusory statement, unsupported by factual allegations, is not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 678.

James C. Mahan
U.S. District Judge

- 8 -

### c. Violations of NRS § 686A.310

Liberty Mutual seeks dismissal of plaintiffs' claim for relief pursuant to NRS § 686A.310. (ECF No. 5). Plaintiffs contend that they have sufficiently pled a claim for violation of NRS § 686A.310. (ECF No. 12).

Here, plaintiffs base this claim on the same conduct alleged to support their breach of contract and breach of the implied covenant causes of action. Plaintiffs note that "the facts alleged in the complaint squarely implicate the claims handling practices of Liberty Mutual . . . and the claim expressly incorporates all the prior allegations." *Id.* at 19. Because this claim is based on the same facts that resulted in dismissal of plaintiffs' breach of contract and breach of the implied covenant claims, the court will dismiss plaintiffs' NRS § 686A.310 claim. *See Kelly*, 2011 U.S. Dist. LEXIS 111136, at *21 (D. Nev. Sept. 27, 2011); *see also Striegel*, 2015 U.S. Dist. LEXIS 88653, at *16 (D. Nev. July 7, 2015).

### d. Punitive damages

Punitive damages are not a legitimate basis for an independent cause of action. *See*, *e.g.*, *Garcia v. Nevada Property 1, LLC*, No. 2:14-cv-1707-JCM-GWF, 2015 WL 67019, at *4 (D. Nev. Jan. 6, 2015); *Rowe v. Clark County School Dist.*, No. 2:16-cv-661-JCM-PAL, 2017 WL 2945718, at *3 (D. Nev. July 10, 2017). Accordingly, the court will dismiss this claim. *See id.*

## IV. Conclusion

The court will grant the pending motion to dismiss. The remaining motion to stay (ECF No. 15) will therefore be denied as moot.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Liberty Mutual's motion to dismiss (ECF No. 5) be, and the same here is, GRANTED.

IT IS FURTHER ORDERED that Liberty Mutual's motion to stay (ECF No. 15) be, and the same hereby is, DENIED as moot.

. . .

. . .

. . .

The clerk shall enter judgment accordingly and close the case.

DATED July 23, 2018.

_____
UNITED STATES DISTRICT JUDGE